UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| ELAINE WANG, | : |
| | : |
| Plaintiff, | : Civil Action No. 1:21-cv-6426 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| NEW SENIOR INVESTMENT GROUP, | : **SECURITIES EXCHANGE ACT OF** |
| INC., FRANCES ALDRICH SEVILLA- | : **1934** |
| SACASA, SUSAN GIVENS, NORMAN K. | : |
| JENKINS, MICHAEL D. MALONE, DAVID | : **JURY TRIAL DEMANDED** |
| MILNER, ROBERT F. SAVAGE, and | : |
| CASSIA VAN DER HOOF HOLSTEIN, | : |
| | : |
| Defendants. | : |

---

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against New Senior Investment Group, Inc., ("New Senior or the "Company") and the members New Senior's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between New Senior and Ventas, Inc. and its affiliates ("Ventas").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on July 26, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Cadence Merger Sub LLC, a wholly owned subsidiary of Ventas, will merge with and into New Senior with New Senior surviving as a wholly owned subsidiary of Ventas (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each New Senior stockholder will receive 0.1561 of a newly issued share of Ventas stock (the "Merger Consideration").

3.      As discussed below, Defendants have asked New Senior's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, Morgan Stanley & Co. LLC ("Morgan Stanley") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to New Senior's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because New Senior is headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of New Senior stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Frances Aldrich Sevilla-Sacasa has served as a member of the Board since January 2021.

11. Individual Defendant Susan Givens has served as a member of the Board, President and Chief Executive Officer of the Company since the Company's inception in October 2014.

12. Individual Defendant Norman K. Jenkins has served as a member of the Board since November 2020.

13. Individual Defendant Michael D. Malone has served as a member of the Board since October 2014.

14. Individual Defendant David Milner has served as a member of the Board since March 2018.

15. Individual Defendant Robert F. Savage has served as a member of the Board since February 2016.

16. Individual Defendant Cassia van der Hoof Holstein has served as a member of the Board since March 2018.

17. Defendant New Senior a Delaware corporation and maintains its principal offices at 55 West 46th Street, Suite 2204, New York, NY 10036. The Company's stock trades on the New York Stock Exchange under the symbol "SNR."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.  The Proposed Transaction**

20. New Senior is a publicly-traded real estate investment trust with a diversified portfolio of senior housing properties located across the United States. As of March 31, 2021, the Company is one of the largest publicly-traded owners of senior housing properties, owning 103 properties across 36 states. The Company's portfolio is comprised of 102 independent living properties and 1 continuing care retirement community. New Senior was founded in October 2014 and is headquartered in New York City.

21. On June 28, 2021, the Company and Ventas jointly announced the Proposed Transaction:

> CHICAGO & NEW YORK--(BUSINESS WIRE)--Ventas, Inc. (NYSE: VTR) ("Ventas") and New Senior Investment Group Inc. (NYSE: SNR) ("New Senior") today announced that they have entered into a definitive merger agreement pursuant to which Ventas will acquire New Senior in an all-stock transaction (the

4

"Transaction"), valued at approximately $2.3 billion, including $1.5 billion of New Senior debt.

New Senior has a high-quality, geographically diversified portfolio of 103 private pay senior living communities, including 102 independent living communities, totaling 12,404 units and located across 36 states in the United States.

Under the terms of the agreement, New Senior shareholders will receive 0.1561 shares of newly issued Ventas stock per share of New Senior common stock. Based on the closing price of Ventas common stock on June 25, 2021, this represents approximately $9.10 per New Senior share, a 31% equity premium based on New Senior's 30-day trading average, and a 10% premium on New Senior's total enterprise value.

The Transaction valuation is expected to represent approximately a 6% capitalization rate on expected New Senior 2022 Net Operating Income ("NOI") and is expected to be approximately $0.09 to $0.11 accretive to Ventas's normalized funds from operations per share on a full year basis.

"Building on the strong momentum we are experiencing in our business, we are delighted to announce this strategic and accretive acquisition with New Senior that expands Ventas's position in senior housing at an important inflection point in the cycle as the senior housing industry rebounds," said Debra A. Cafaro, Ventas Chairman and CEO.

"The transaction provides Ventas shareholders with an attractive valuation and accretion, and further positions us to win the recovery. It continues Ventas's longstanding track record of capital allocation excellence, builds on our deep experience with the independent living product and leading operators Atria and Holiday, and is a testament to the continued dedication and expertise of our outstanding team."

J. Justin Hutchens, Ventas's EVP, Senior Housing, added, "I am excited to include the New Senior assets in our portfolio. These independent living communities represent a strong fit with our existing portfolio, as we enhance our senior housing business to capture upside from the industry recovery."

"New Senior's independent living communities are located in advantaged markets, enjoy positive supply demand fundamentals, appeal to a large and growing middle market senior demographic, have demonstrated superior financial performance and are rapidly growing occupancy and leads."

"We are pleased to have reached this agreement with Ventas, which provides immediate, full and fair value to our shareholders," said Susan L. Givens, President and Chief Executive Officer of New Senior. "It was a pleasure to work with the focused and knowledgeable Ventas team. Our Board and management team have concluded that combining with Ventas will provide all of our stakeholders the opportunity to benefit from the upside potential of a combined company that has enhanced size, scale, relationships and financial strength."

**Strategic and Financial Benefits of the Transaction**

- **Enhances Ventas's senior housing position at a cyclical inflection point in advance of the expected powerful senior housing industry recovery**
    - The Transaction significantly expands Ventas's participation in the robust senior housing recovery through its Senior Housing Operating ("SHOP") portfolio. With resilient demand from a rapidly growing population of seniors, new construction at cyclical lows, and the trough of the COVID-19 pandemic behind us, independent living senior housing is poised for exciting growth.
    - The accelerating 80+ population is expected to grow by over 2 million individuals through 2025 and is expected to increase from 13 million in 2020 to nearly 20 million by 2030. Senior housing new construction trends are favorable, with new construction starts at the lowest level since 2011.
- **Adds a superior quality, high performing portfolio to Ventas that is well located in advantaged markets**
    - New Senior has driven strong historic performance. In the early stages of the post-pandemic recovery, the portfolio has seen positive trends with leads and move-ins in the second quarter accelerating through June and expected to exceed the comparable pre-pandemic period in 2019. New Senior "same-store" occupancy gains have accelerated in June and the 2Q21 "spot to spot" occupancy change is expected to be toward the high-end of the 2Q21 guidance range of +120bps to +150bps sequentially.

- o New Senior's communities are located in highly attractive sub-markets with compelling metrics, including advantaged median home values exceeding $300,000, median incomes exceeding $70,000, proximity to premier retail locations and limited deliveries of new supply expected in the next few years. The wealth metrics in these submarkets makes the communities' price point highly affordable and accessible.
- o The New Senior portfolio comprises well invested, purpose-built properties with attractive physical characteristics, including large, well-designed floorplans appealing to the independent living demographic. It has limited near term capital expenditure needs but provides opportunity for select investment in revenue enhancing projects.
- o The New Senior portfolio has highly favorable operating margins approximating 40% pre-pandemic that benefit from the independent living staffing model with minimal need for care and a resident length of stay of approximately three years.
- **Expands Ventas's exposure to independent living in the United States, catering to a large and growing middle market**
    - o Demographic and new supply trends in independent living support strong and accelerating positive net absorption over the intermediate term.
    - o Complementary to Ventas's high end major market senior housing portfolio, independent living expands the addressable market by appealing to the large and growing middle income senior population, which is expected to grow by 82% to 14 million by 2029, at which time the segment is expected to represent 43% of all seniors.
- **Builds on Ventas's Existing Relationships with Leading Operators; Adds New Operators**
    - o 65 independent living communities under terminable management contracts with longstanding Ventas manager Holiday Retirement ("Holiday").
        - 21 independent living communities under long term management contracts with longstanding Ventas leading operator Atria Senior Living ("Atria").
        - 16 independent living communities under management contracts with other senior housing managers including Grace Management, Merrill Gardens Senior Living, Hawthorn Senior Living and Watermark Retirement Communities.
    - o Ventas holds a 34% ownership stake in Atria, and Atria and Holiday recently agreed to combine as one entity. This Transaction will enable Ventas to benefit from the scale,

7

technology, team and operating capabilities of both companies.

- **Attractive Valuation & Financial Returns**
    - The Transaction valuation is expected to represent approximately a 6% capitalization rate on expected New Senior 2022 NOI; and approximately an 8% capitalization rate on estimated New Senior NOI over time, incorporating the attractive medium-term supply demand fundamentals in independent living.
    - The acquisition price implies a 20% to 30% discount to estimated replacement cost on a per unit basis.
    - Ventas expects to realize between $16 to $18 million in annualized corporate G&A synergies commencing in 2022.
    - The Transaction price represents a multiple of <12 times estimated 2022 New Senior normalized FFO per share including full synergies.
    - Ventas expects to make revenue generating capital investments for additional value add opportunities in select communities and markets.
    - Ventas expects to assume certain existing New Senior mortgage debt and fund the repayment of any debt not assumed through other capital sources.

**Pro Forma Portfolio Composition**

The Transaction increases Ventas's exposure to the powerful recovery in Senior Housing. Pro forma for the Transaction:

- Ventas's total Senior Housing portfolio concentration will increase from 44% to 48% of first quarter 2021 annualized adjusted NOI.
    - Ventas's SHOP portfolio mix will increase from 26% to 31%.
- Ventas's SHOP portfolio independent living unit mix will increase from 48% to 58%.
- SHOP portfolio NOI generated in the United States will increase from 61% to 69%.

**Approvals, Timing and Dividends**

The Transaction is expected to close during the second half of 2021, subject to customary closing conditions, including approval by the common shareholders of New Senior. The Companies have agreed to synchronize the record and payment dates for their dividends, which are expected to remain at their current levels prior to the closing of the Transaction, subject to approval of their respective Boards of Directors, on the dates typically used by Ventas.

The Board of Directors of both companies have unanimously approved the Transaction.

8

> **Advisors**
> Centerview Partners LLC is serving as financial advisor and Wachtell, Lipton, Rosen & Katz is acting as legal advisor to Ventas. Morgan Stanley & Co. LLC is serving as financial advisor and Cravath, Swaine & Moore LLP is acting as legal advisor to New Senior.

\* \* \*

22. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that New Senior's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.   The Materially Incomplete and Misleading Registration Statement**

23. On July 26, 2021, New Senior and Ventas jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24. The Registration Statement fails to provide material information concerning financial projections by management and relied upon by Morgan Stanley in its analyses. The Registration Statement discloses management-prepared financial projections for the Company

which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management prepared certain non-public financial forecasts (the "Company Projections" and provided them to the Board and Morgan Stanley by management of New Senior with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that managements provided to the Board and their financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25. For the Company Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2021 through 2025: Total Cash Revenue, Cash NOI, Normalized Funds From Operations, and Adjusted Funds From Operations, as calculated by each of the Company's and Ventas's financial advisors, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or

released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

28. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Registration Statement not misleading.

29. In addition, the Registration Statement fails to disclose Ventas management forecasts. This information is material as New Senior shareholders will be receiving Ventas stock as consideration for their New Senior stock.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

30. With respect to Morgan Stanley's *Dividend Discount Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the range of terminal NFFO multiples of 10.0x to 12.0x to New Senior's NFFO per share; and (ii) the inputs and assumptions underlying the use of discount rates ranging from 9.7% to 11.7%.

31. With respect to Morgan Stanley's *Private Levered Buyer Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the terminal capitalization rate range of 6.5% to 7.0%; and (ii) a target range of annualized internal rates of return for the financial sponsor of 15% to 20%.

32. With respect to Morgan Stanley's *Broker Price Targets Analysis for New Senior*, the Registration Statement fails to disclose the analysts observed and the corresponding price targets for each analyst.

33. With respect to Morgan Stanley's *Broker Price NAV per Share Analysis for New Senior*, the Registration Statement fails to disclose the analysts observed and the corresponding NAV per share estimates for each analyst.

34. With respect to Morgan Stanley's *Broker Price Targets Analysis for Ventas*, the Registration Statement fails to disclose the analysts observed and the corresponding price targets for each analyst.

35. With respect to Morgan Stanley's *Broker Price NAV per Share Analysis for Ventas*, the Registration Statement fails to disclose the analysts observed and the corresponding NAV per share estimates for each analyst.

36. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

42. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of New Senior within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of New Senior, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of New Senior, including the content and

dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of New Senior, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

47. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by

their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 28, 2021             By: __MELWANI & CHAN LLP__

17

*/s/ Gloria Kui Melwani*
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com